S. LANE TUCKER
United States Attorney

JENNIFER IVERS
Assistant United States Attorney
GWENDOLYN RUSSELL
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jennifer.ivers@usdoj.gov
Email: russell.gwendolyn@epa.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) No. 3:22-cr-00087-SLG-KFR |
|---|---|
| Plaintiff, | ) |
| vs. | ) **PLEA AGREEMENT** |
| PRINCE WILLIAM SOUND AQUACULTURE CORPORATION, | ) |
| Defendant. | ) |

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

# I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

## A. Summary of Agreement

The defendant agrees to plead guilty to the following count of the Information in this case: 1 - Illegal Disposal of Hazardous Waste, in violation of 42 U.S.C. § 6928(d)(2)(A). The defendant agrees to pay $550,000 restitution to C.F. and a fine of $450,000 at imposition of sentence. The defendant agrees to undergo five years of probation, during which the defendant will enter and follow an environmental compliance plan agreed upon by the parties. The United States agrees not to prosecute the defendant or former employee Michael Tompkins further for any other offense related to the events that resulted in the charge contained in the Information.

The defendant will waive all rights to appeal the conviction and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the conviction and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea.

## B. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A), (B), and (C) will control this plea agreement. Thus, the defendant may withdraw from this agreement or the guilty plea if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

### A. Charges

**The defendant agrees to plead guilty to the following count of the Information:**

Count 1: Illegal Disposal of Hazardous Waste, a violation of 42 U.S.C. § 6928(d)(2)(A)

### B. Elements

The elements of the charge in Count 1 to which the defendant is pleading guilty are as follows:

1. The defendant is a person who;
2. Knowingly;
3. Disposed of;
4. A listed or identified hazardous waste;
5. Without a permit or interim status.

### C. Factual Basis

The defendant admits the truth of the allegations in Count 1 of the Information and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea and for the imposition of the sentence:

Defendant Prince William Sound Aquaculture Corporation (PWSAC) is a nonprofit corporation that owns and operates two fish hatcheries in Alaska. PSWAC also

operates an additional three fish hatcheries owned by the State of Alaska, including Cannery Creek Hatchery. PWSAC has operated Cannery Creek Hatchery since 1988. The hatchery is located in a remote area in Unakwik Inlet, Alaska, where employees live on-site in company residences. Supplies are transported to and from the site by plane or PWSAC's landing craft boat. Over time, the site accumulated various waste oil, fuel, and chemical products left over from hatchery operations.

In 2013, Cannery Creek Hatchery had a 400-gallon diesel fuel spill from a heating oil tank, resulting in the State of Alaska filing criminal charges against PWSAC and two PWSAC employees. The charges were resolved in 2017 through a civil settlement that imposed a fine of $55,000 and required PWSAC to hire the consulting firm Nortech Environmental Engineering & Industrial Hygiene Consultants (Nortech) to perform an environmental audit and prepare an environmental compliance plan for all five of PWSAC's hatcheries.

Nortech prepared Spill Prevention, Control and Countermeasures Plans (SPCCP) for each hatchery. The SPCCP for Cannery Creek Hatchery noted, among other findings, that the hatchery was storing new and used oil products in various locations without appropriate secondary containment. The SPCCP required corrective measures by December 31, 2017. That month, the Hatchery Manager for the site, Jon Palmer, emailed PWSAC management about measures necessary to bring the site into compliance, including the need for additional storage for oil and other chemicals. Six months later, in June 2018, Hatchery Manager Palmer sent another email to PWSAC management about

coming into compliance with the SPCCP, including the need to procure additional storage for oil and chemicals to address what Palmer termed "a nasty situation."

In the interim, Nortech had completed its audit of all of the hatcheries and circulated a draft Environmental Audit Report to PWSAC management in April 2018. Among other areas of concern, the audit report found that Cannery Creek Hatchery did not have a formal waste management plan, and that solid waste was being burned in an open pit at the site without any official standard of practice for the burning. The report also noted the storage of various types of fuel and oils at the site.

A separate PWSAC hatchery was also struggling with how to handle accumulated waste material including oil and fuel. In June 2018, the Armin F. Koernig Hatchery spilled diesel fuel into Sawmill Bay while rinsing a mislabeled 55-gallon drum containing diesel fuel. In July 2018, the manager of a third hatchery, the Main Bay Hatchery, emailed PWSAC management requesting assistance removing used oil and was told that PWSAC was "working on a strategy for removal," likely by finding "a site that can stage or burn the used oil." The disposal of drums containing used oil was a long-standing issue at PWSAC's hatcheries, and there was a historical practice at some sites of burning the drums so they could be crushed and disposed of.

On July 27, 2018, Cannery Creek Hatchery's Maintenance Manager, Michael Tompkins, directed two employees to dispose of four 55-gallon drums containing a mixture of waste oil and jet fuel by burning the drums on the site's open burn pit. He instructed them to distribute one 55-gallon drum of jet fuel amongst three other 55-gallon drums containing waste oil, leave the bung holes on the drums open, place the drums on

the fire, and puncture the drums to increase air flow during the burning. The employees placed the first drum on the lit fire using a front loader with a fork attachment, and one of the employees, victim C.F., punctured it with a pickaxe. He then determined the practice was too dangerous to perform on the other drums. The employees then placed two more drums on the fire. At one point, a drum rolled off the fire, and they attempted to throw it back on the fire using their hands, before managing to place it on the fire with the loader. They were not wearing any personal protective equipment. While they were burning the drums, Hatchery Manager Palmer stopped by the burn pit to discuss other matters, and did not tell them to stop or otherwise intervene.

After placing three of the drums on the fire, they took a break and left the area. C.F. subsequently returned to the burn pit. One of the drums on the fire fell over towards him. Jet fuel spilled from the open bung hole and ignited, severely burning him. C.F. was medevacked off-site and ultimately underwent extensive burn care. His injuries resulted in disfiguring scars on his face, neck, and hands, as well as mental health impacts. According to analysis by a vocational consultant and a forensic economic consultant, C.F.'s injuries resulted in earnings loss and life care costs of at least $580,951 (and as high as $805,663).

Following C.F.'s injury, the United States Environmental Protection Agency Criminal Investigation Division (EPA-CID) was alerted to the storage and disposal of hazardous waste at Cannery Creek Hatchery. On August 15, 2018, EPA-CID Agents and personnel from EPA's National Enforcement Investigations Center (EPA-NEIC) conducted a consent search at the site. Agents observed a burn pile with two 55-gallon

drums on top of the pile. One of the drums had a hole that was consistent with the shape of a pickaxe that was found nearby. A third drum lying on its side near the pile appeared to have been expanded from ignition of its contents. A fourth drum labeled "JET FUEL A-50" was also sitting near the pile.

Agents observed numerous other drums at the site in various conditions, including drums with rust, damage, and insufficient labeling. One unlabeled drum which was found lying on its side began spouting fluid from a hole when it was placed upright for sampling. Laboratory analysis of samples from the drum exhibited the hazardous characteristic of corrosivity. Laboratory analysis showed that samples from another drum labeled "JET FUEL A-50" (the same label as one of the drums at the burn pile) exhibited the hazardous characteristic of ignitability.

PWSAC ultimately hired a third-party contractor to dispose of the waste from its hatchery sites. According to shipping manifests, several tons of accumulated hazardous waste, and several more tons of various oils and fuels, were removed from Cannery Creek Hatchery alone.

**D. Statutory Penalties and Other Matters Affecting Sentence**

**1. Statutory Penalties**

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea, are as follows:

Count 1: 42 U.S.C. § 6928(d)(2)(A) (Illegal Disposal of Hazardous Waste)

1) 5 years of imprisonment;

2) Fine of $500,000;

3) 5 years of probation;

4) 3 years of supervised release; and

5) $100 special assessment.

**2.    Other Matters Affecting Sentence**

**3.    Conditions Affecting the Defendant's Sentence**

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of United States Sentencing Guidelines (U.S.S.G.) § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

**4.    Payment of Special Assessment**

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are

to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### 5. Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

### E. Restitution

The defendant agrees that the improper disposal of hazardous waste directly led to the injuries sustained by C.F. The defendant therefore agrees that the Court will order restitution to C.F. in the amount of $550,000.00, to be paid at sentencing.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Guidelines (U.S.S.G.) as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the

sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

**B.     Guideline Application Agreements**

The parties have no agreements on any guideline applications.

**C.     Sentencing Recommendations**

The United States Probation Office (U.S.P.O.) will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties agree that the defendant will pay a fine of $450,000 at imposition of sentence and will undergo five years of probation during which the defendant will enter and follow an environmental compliance plan.

**IV.    ADDITIONAL AGREEMENTS BY UNITED STATES**

In exchange for the defendant's guilty plea and the Court's acceptance of the defendant's plea and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth in Section II.C. The United States further agrees

not to prosecute Michael Tompkins for the offenses – now known – arising out of the subject of the investigation related to the charges in the Information in this case.

Provided, however, if the defendant's guilty plea or sentence is rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated, as well as for perjury and false statements.  The defendant hereby agrees that it waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

**V.    WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410**

### A.    Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

**B.** **Appellate Rights**

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II.D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or

supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's conviction and guilty plea, including arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

### C. Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea.

### D. Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

F. Potential Plea before Magistrate Judge

The defendant has the right to enter a plea before a United States District Court Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea taken by a United States Magistrate Judge pursuant to Fed. R. Crim. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case. The defendant agrees that if the defendant is pleading guilty to an offense described in 18 U.S.C. § 3142(f)(1)(A), (B), or (C) (involving a crime of violence, a crime punishable by a maximum sentence of life or death, or a Title 21 controlled substance offense for which

the maximum sentence is ten years or more), that the defendant will remand into custody on the day that he/she agrees in court to the factual basis supporting the plea. The defendant further agrees not to seek release at any time between the date of the guilty plea before the Magistrate Judge and the date of imposition of sentence before the District Court Judge.

VI. **ADEQUACY OF THE AGREEMENT**

Pursuant to Local Criminal Rule 11.2(d)(7), (8), and (9), this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

VII. **THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT**

I, Prince William Sound Aquaculture Corporation, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea. There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, the United States and I will jointly inform the Court in writing before I enter my guilty plea.

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my

attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea. I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

U.S. v. Prince William Sound Aquaculture Corporation

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea. My attorney and I have discussed all possible defenses to the charge to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statutes applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 1 - Illegal Disposal of Hazardous Waste, in violation of 42 U.S.C. § 6928(d)(2)(A) of the Information.

DATED: Oct. 17, 2022

_[signature] on behalf of PWSAC_
PRINCE WILLIAM SOUND
AQUACULTURE CORPORATION
Defendant

U.S. v. Prince William Sound Aquaculture Corporation
Page 17 of 18

Case 3:22-cr-00087-SLG-KFR   Document 5   Filed 10/24/22   Page 17 of 18

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 10-17-22

MATTHEW FINDLEY
Attorney for Prince William Sound
Aquaculture Corporation

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

S. LANE TUCKER
United States Attorney

DATED: 10/21/22

JENNIFER IVERS
Assistant United States Attorney

U.S. v. Prince William Sound Aquaculture Corporation
Page 18 of 18